

# CyberTipline Report 188008527

## Priority Level: E
## (Report submitted by a registered Electronic Service Provider)

Received by NCMEC on 02-22-2024 03:17:17 UTC

All dates are displayed as MM-DD-YYYY

Except for times provided in Additional Information sections, all time zones are displayed in UTC

---

## Executive Summary

The following is a brief overview of information contained in this CyberTipline report:

Total Uploaded Files: 1

| Summary of ESP Reported Files | |
|---|---|
| Total Uploaded Files | 1 |
| Viewed by ESP | 1 |
| Publicly Available | 1 |

| Summary of NCMEC File Categorizations | |
|---|---|
| Content Categorizations | |
| Apparent Child Pornography | 1 |

Not all files will have categorizations and some might have multiple categorizations.

**Incident Type:** Apparent Child Pornography
Files Not Reviewed by NCMEC, Hash Match

NCMEC Incident Type is based on NCMEC's review of the information or uploaded files in this report **OR** a "Hash Match" of one or more uploaded files.

The National Center for Missing & Exploited Children (NCMEC) is a private, non-profit 501(c)(3) organization created in 1984 by child advocates to serve as a national clearinghouse and resource center for families, victims, private organizations, law enforcement, and the public on missing and sexually exploited child issues. To further NCMEC's mission to reduce child sexual exploitation and prevent future victimization, NCMEC operates the CyberTipline. NCMEC makes information submitted to the CyberTipline by members of the public and Electronic Service Providers available to law enforcement and uses this information to identify online trends endangering children that can be addressed in child safety and prevention messaging. NCMEC offers its programs and services pursuant to its own private mission and independent business operations. NCMEC does not act in the capacity of or under the direction or control of the government or law enforcement agencies. NCMEC does not investigate and cannot verify the accuracy of the information submitted to the CyberTipline.

**EXHIBIT A-1**



## Contents

Section A: Reported Information                                             1

    Reporting Electronic Service Provider (ESP)                         1
    Relevant Terms of Service                                          1
    Incident Information                                                1
    Chat/Instant Messaging                                             1
    Suspect                                                            1
    Uploaded File Information                                           1

Section B: Automated Information Added by NCMEC Systems                     3

    Explanation of Automated Information (in alphabetical order)        3
    Uploaded File Information                                           3
    IP Geo-Lookup (Suspect)                                            3
    Phone Number Geo-Lookup (Suspect)                                  3
    Auto Refer                                                         3
    Deconfliction                                                      3

Section C: Additional Information Provided by NCMEC                          5

    Uploaded File Information                                           5

Section D: Law Enforcement Contact Information                              6

    Fresno County Sheriff's Department                                  6

*This Report is provided solely for informational purposes pursuant to NCMEC's nonprofit mission.*
*Please treat all information in this Report as confidential.*

**EXHIBIT A-2**



# Section A: Reported Information

The following information was submitted to the CyberTipline by the Reporting Person or Reporting ESP. The information appearing in Section A is information received in the original submission. The reporting of information in Section A, other than the "Incident Type" and "Incident Time," is voluntary and undertaken at the initiative of the Reporting Person or Reporting ESP.

## Reporting Electronic Service Provider (ESP)

Submitter:

Discord Inc.
TNS Exploitative Content

Business Address:
444 De Haro Street, Suite 200
San Francisco, CA 94107

Point of Contact for Law Enforcement:

Rolando Vega
Business Email: lawenforcement@discordapp.com

## Relevant Terms of Service

https://discordapp.com/terms

## Incident Information

Primary Incident Type:     Child Pornography (possession, manufacture, and distribution)
Incident Time:             02-22-2024 03:07:08 UTC

## Chat/Instant Messaging

Chat Service/IM Client:    Discord

## Suspect

Phone:                     +███████ (Verified)
Screen/User Name:          mike12083096
ESP User ID:               1076683047635779594
IP Address:                76.20.76.73 (Login)
                           02-22-2024 03:17:15 UTC

## Uploaded File Information

Number of uploaded files:  1

## Uploaded File Information

Filename:                              IMG_1739.gif
MD5:                                   38ccc9a7a1fc821b5bae6de48da503dd
Original Filename Associated with File:  IMG_1739.gif

*This Report is provided solely for informational purposes pursuant to NCMEC's nonprofit mission.*
*Please treat all information in this Report as confidential.*

**EXHIBIT A-3**

PANUCO_00000020



| | |
|---|---|
| **Did Reporting ESP view entire contents of uploaded file?** | Yes |
| **Did Reporting ESP view the EXIF of uploaded file?** | (Information Not Provided by Company) |
| **Were entire contents of uploaded file publicly available?** | Yes |
| **Original URL Where File was Located:** | https://cdn.discordapp.com/attachments/1210056112838156339/1210060<br>177076781087/IMG_1739.gif?ex=65e92f5c&is=65d6ba5c&hm=1c339a13<br>ad0b625e237aadbb9e1282ab7cc0e5bf919667b89585ee3bf28a608a& |

This concludes Section A. All of the information in this section was submitted electronically to the CyberTipline by the Reporting Person, NCMEC Call Center or Reporting ESP. The information appearing in Section A is information received in the original submission. The reporting of information in Section A, other than the "Incident Type" and "Incident Time," is voluntary and undertaken at the initiative of the Reporting Person or Reporting ESP.

*This Report is provided solely for informational purposes pursuant to NCMEC's nonprofit mission.*
*Please treat all information in this Report as confidential.*

**EXHIBIT A-4**

PANUCO_00000021



# Section B: Automated Information Added by NCMEC Systems

Upon receipt of a CyberTipline report, NCMEC Systems may conduct automated processes on the information submitted in Section A. The information found in Section B of this CyberTipline Report has been automatically generated by NCMEC Systems. If the CyberTipline Report was submitted by a member of the public, Section B will be blank.

**Date PDF Generated:** 02-29-2024 21:13:48 UTC

## Explanation of Automated Information (in alphabetical order)

**Geo-Lookup:** When a reporting party voluntarily reports an IP address and/or phone number, NCMEC Systems will geographically resolve the IP address and/or phone number via publicly-available online queries. The results of the lookups are displayed below.

Geolocation data is approximate and may not display a user's exact location. Please be aware that the geolocation information provided is not exact but is providing a reliable estimate of location based on identifiers voluntarily provided by the reporting party.

## Uploaded File Information

**File Tag(s):** Automated file categorization is based on NCMEC's review of uploaded files in this report **OR** a "Hash Match" of one or more uploaded files to visually similar files that were previously viewed and categorized by NCMEC at the time a PDF of this report was generated.

### Files and Categorization

| Filename | MD5 | Categorization |
|---|---|---|
| IMG_1739.gif | 38ccc9a7a1fc821b5bae6de48da503dd | Apparent Child Pornography |

## IP Geo-Lookup (Suspect)

| IP Address | Country | Region | City | Metro Area | Postal Code | Area Code | Lat/Long | ISP/Org |
|---|---|---|---|---|---|---|---|---|
| 76.20.76.73 | US | CA | Fresno | Fresno-Visalia | 93727 | | 36.7539/ -119.7085 | Comcast Cable/ Comcast Cable |

## Phone Number Geo-Lookup (Suspect)

| Phone Number | Queried Number | First Name | Last Name | Address | City | State | Postal Code | Carrier | Phone Type |
|---|---|---|---|---|---|---|---|---|---|
| ▇▇▇▇▇▇ | ▇▇▇▇▇▇ | TIMOTHY | PANUCO | | FRESNO | CA | 93722 | AT&T Mobility | Wireless |

## Auto Refer

Date: 02-29-2024 17:10:01 UTC
The reported information appears to resolve a U.S. state or territory in which there is a designated law enforcement agency that has established a secure connection to NCMEC's CyberTipline. In accordance with current NCMEC policy, this report will be referred automatically to the designated law enforcement agency for potential evaluation, investigation, and/or prosecution. Law enforcement should review all information and uploaded files associated with this report before determining how to proceed. Law enforcement seeking further information relating to this report should submit a request to ecuassistance@ncmec.org.

*This Report is provided solely for informational purposes pursuant to NCMEC's nonprofit mission.*
*Please treat all information in this Report as confidential.*

**EXHIBIT A-5**



## Deconfliction

Date: 02-29-2024 21:13:48 UTC

NCMEC systems will perform automated queries on selected reported identifiers from Section A and provide a list of possibly related results at the time a PDF of this report was generated. Please be aware that automated deconfliction queries were not conducted for identifiers not listed below.

At this time, the below reported information **does not** appear to match to information seen in additional CyberTipline reports.

| This Report 188008527 | Additional Report ID(s) |
|---|---|
| **Suspect** | |
| ESP User ID 1076683047635779594 | No match results returned from system |
| IP Address 76.20.76.73 | No match results returned from system |
| Phone ██████████ | No match results returned from system |

**This concludes Section B**

*This Report is provided solely for informational purposes pursuant to NCMEC's nonprofit mission.*
*Please treat all information in this Report as confidential.*

**EXHIBIT A-6**



# Section C: Additional Information Provided by NCMEC

Section C contains information collected by NCMEC staff based on the information electronically submitted by the Reporting Person, NCMEC Call Center or Reporting ESP. Section C may contain a variety of additional information, including data gathered from queries on publicly-available, open-source websites. Any queries conducted by NCMEC staff will be documented and any query results will be saved to the electronic filing system when possible. The CyberTipline cannot confirm the accuracy of information found in public records or whether the results are affiliated with any parties relating to this report.

**Date PDF Generated:** 02-29-2024 21:13:48 UTC

| | |
|---|---|
| **NCMEC Priority Level:** | E (Report submitted by a registered Electronic Service Provider) |
| **NCMEC Classification\*:** | Apparent Child Pornography<br>Files Not Reviewed by NCMEC, Hash Match |
| **International Country:** | United States |
| **NCMEC Date Processed:** | 02-29-2024 17:10:01 UTC |
| **Made Available to Law Enforcement by NCMEC:** | Yes |

*\*NCMEC Classification is based on NCMEC's review of the report OR a "Hash Match" of one or more uploaded files. NCMEC may not have viewed all uploaded files submitted by the reporting ESP.*

## Uploaded File Information

**Files Not Viewed by NCMEC:**

NCMEC staff have not viewed the following uploaded files and have no information concerning the content of the uploaded files other than information voluntarily provided in the report by the reporting ESP or noted in Section B of the report.

### Files Not Viewed by NCMEC:

| Filename | MD5 |
|---|---|
| IMG_1739.gif | 38ccc9a7a1fc821b5bae6de48da503dd |

### This concludes Section C

If you need further information regarding the contents of this Report, please contact the CyberTipline at ecuassistance@ncmec.org or 1-877-446-2632, ext. 6702.

For more information regarding images containing identified child victims, please contact the Child Victim Identification Program (CVIP) at cvip@ncmec.org.

*This Report is provided solely for informational purposes pursuant to NCMEC's nonprofit mission.*
*Please treat all information in this Report as confidential.*

**EXHIBIT A-7**

PANUCO_00000024


# Section D: Law Enforcement Contact Information

The report was made available to the Law Enforcement Agency listed below.

### Fresno County Sheriff's Department

Investigator:

| | |
|---|---|
| **Assigned Officer:** | Access VPN |
| **Title:** | Lt. Arley Terrence |
| **City/State:** | Fresno, CA |
| **Country:** | United States |
| **Phone Number:** | 559-600-8144 |
| **Email Address:** | Sharon.nichols@fresnosheriff.org,Arley.Terrence@fresnosheriff.org,patrick.beggs@fresnosheriff.org,fernando.maldonado@fresnosheriff.org |

Time/Date was made available: 02-29-2024 17:10:01 UTC

**This concludes Section D**

**This concludes CyberTipline Report 188008527**

*This Report is provided solely for informational purposes pursuant to NCMEC's nonprofit mission.*
*Please treat all information in this Report as confidential.*

**EXHIBIT A-8**

PANUCO_00000025

| | | |
|---|---|---|
| **SUPERIOR COURT OF CALIFORNIA • COUNTY OF FRESNO**<br>1100 Van Ness Avenue<br>Fresno, California 93724-0002 | | |
| AGENCY CASE NUMBER:<br>CT#188008527 | **SEARCH WARRANT** | WARRANT NUMBER: |

The PEOPLE OF THE STATE OF CALIFORNIA to any peace officer in Fresno County.

The affidavit below, sworn and subscribed before me, has established probable cause for this search warrant which you are ordered to execute as follows:

**Place(s) to be searched:** Described in Attachment A, attached hereto and incorporated by reference.

**Property to be searched:** Described in Attachment B, attached hereto and incorporated by reference.

**Night service:** [If initialed by Judge] For good cause shown, as set forth in the Statement of Probable

Cause, night service is authorized: _____

**Disposition of Property:** All property seized pursuant to this search warrant shall be retained in the affiant's custody pending further order of the court, pursuant to Penal Code §§ 1528(a) & 1536.

**✗ -The oath was administered orally over the telephone by the magistrate to the affiant.**

| | |
|---|---|
| **3/5/2024 2:04:48 PM**<br>Date and time warrant issued | Judge of the Superior Court |

## AFFIDAVIT

**Incorporation:** The facts in support of this warrant are contained in the Statement of Probable Cause which is incorporated by reference. Also, incorporated by reference and attached hereto are Attachment A, describing the place(s) to be searched; and Exhibit B, describing the evidence to be seized.

**Evidence Type:** (Penal Code § 1524)

- ☐ Stolen or embezzled property.
- ☐ Property or things to be used as a means of committing a felony.
- ☐ Property or things in the possession of any person with the intent to use it as a means of committing a public offense, or in the possession of another to whom he or she may have delivered it for the purpose of concealing it or preventing it from being discovered.
- ☑ Property or things that are evidence that tends to show that a felony has been committed, or tends to show that a particular person has committed a felony.
- ☑ Property or things that are evidence that tends to show that sexual exploitation of a child, in violation of Penal Code §311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years, in violation of Penal Code §311.11 has occurred or is occurring.
- ☐ Other: _____
- ☐ Night Service: [If checked] Authorization for night service is requested based on information in the Statement of Probate Cause, filed herewith.

**Declaration:** I declare under penalty of perjury that the information within my personal knowledge contained in this affidavit, including all incorporated documents, is true.

| | |
|---|---|
| March 5, 2024<br>Date | /S/ J. Tamayo A812<br>Affiant |

**EXHIBIT B-1**

PANUCO_00000030

**ATTACHMENT A**

<u>YOU ARE THEREFORE COMMANDED TO SEARCH:</u>

1. The premises known as **AT&T:**

      Attn: Global Legal Demands Center

      11760 U.S. Highway 1, Suite 300

      North Palm Beach, FL 33408

      (888) 938-4715

      Service via email at gldc@att.com

3. The premises known as **Discord Inc.**:

      444 De Haro Street Suite 200

      San Francisco, CA 94107

      (888) 594-0085

      Service via email at **lawenforcment@discordapp.com**

**End of ATTACHMENT A**

**ATTACHMENT B**

**<u>FOR THE FOLLOWING PROPERTY:</u>**

Property or things that are evidence that tends to show that a felony has been committed or tends to show that a particular person has committed a felony.

1. The following **AT&T** records associated with the following account:

      **Phone Number:** ███████████

In compliance with California Electronic Communications Privacy Act referenced by California Penal Code § 1546.1(d)(1), each of the types of records specified below associated with the AT&T account shall be for the period of **08/22/23 to 03/04/24**.

The provided records shall be reviewed for evidence related to the crime(s) of 311.11 of the California Penal Code to wit: Child Sexual Abuse Material (possession, manufacture, and distribution).

      **a. Device Information:** Records of the devices used by the Target Account to access AT&T services by either the AT&T website and/or smartphone application. The records shall include device attributes such as make and model of the device, operating system information, browser type, and unique identifiers and device IDs like IMEI, GAID or IDFA.

      **b. Internet Access Records:** Internet access records for the Target Account. These records are to include assigned IP addresses, associated dates and times, duration, and data usage amounts. These IP records shall include the associated PORT number if available.

      **c. Subscriber Information:** Subscriber information including personal information, billing, or account notes for the Target Number. Subscriber information shall also include prior and current cellular phone numbers, device equipment history, device purchase location records, and IMEI & ESN numbers associated with the Target Number from accounts start date.

**EXHIBIT B-3**

PANUCO_00000032

2. The following **Discord Inc.** records associated with the following account:

      **Phone number:** +▮▮▮▮▮▮▮▮▮

      **Screen/Username:** mike12083096

      **ESP User ID:** 1076683047635779594

In compliance with California Electronic Communications Privacy Act referenced by California Penal Code § 1546.1(d)(1), each of the types of records specified below associated with the Discord Inc. account shall be for the period of **08/22/23 to 03/04/24**.

      **a. Non-Content Information:** Email address verification status and friends list for the user.

      **b. Stored Content:** Stored messages and attachments that users send to each other in text channels, whether it's in a server or in direct messages.

      **c. Stored Media:** All photographic/video/audio data and associated metadata and geolocation data.

      **d. Subscriber Information:** The unique user ID number of the account that is assigned by Discord, registration date, and time for the account, registration IP address of the account, email address provided by the user, user's current username and tag number. If the user is a pad subscriber, limited billing information, IP addresses and session start time stamps.

**IT IS FURTHER ORDERED** that the Custodian of Records for the company identified above provide a certification of records pursuant to Penal Code Section 1546.1(d)(3). The attached records under penalty of perjury should be true copies of the records described in the above search warrant, and they were prepared at or near the time of the event which they pertain.

**IT IS ALSO ORDERED** that named companies shall delay notification of the existence of the application or this Order of the Court, or the existence of the investigation, to the listed subscriber or to any other person, for a period of 90 days (**June 3, 2024**) unless otherwise directed by the Court.

**Target Delay of Notification and Non-Disclosure Order**

**EXHIBIT B-4**

PANUCO_00000033

1    IT IS HEREBY ORDERED that, pursuant to the delayed notice provisions of California Penal Code

2    1546.2(b)(1), notification to the target of the investigation shall be delayed for a period of 90 days.

3    Upon expiration of the period of delay of the notification, the government entity shall submit to the

4    California Department of Justice within three days of the execution of the warrant a notice that

5    includes information about the target of the investigation, that said information has been

6    compelled or obtained, and states with reasonable specificity the nature of the government

7    investigation under which the information is sought. This notice will include a copy of all electronic

8    information obtained or a summary of that information and a statement of the grounds for the

9    court's determination to grant a notification delay to the target. This notice is being provided to

10   the California Department of Justice as the target of the investigations has not been identified. The

11   affidavit herein has established sufficient reason to believe that immediate compliance with the

12   notice requirements set forth in California Penal Code 1546.2(a) will:

13   ☐ Endanger the life or physical safety of an individual.

14   ☐ Result in flight from prosecution.

15   ☒ Result in tampering or destruction of evidence.

16   ☐ Result in intimidation of a potential witness.

17   ☒ Seriously jeopardize an investigation.

18

19   **California Electronic Communication Privacy Act:**

20       ***Pursuant to Penal Code 1546.1(d)(3)*** *The warrant shall comply with all other provisions of*

21   *California and federal law, including any provisions prohibiting, limiting, or imposing additional*

22   *requirements on the use of search warrants. If directed to a service provider, the warrant shall be*

23   *accompanied by an order requiring the service provider to verify the authenticity of electronic*

24   *information that it produces by providing an affidavit that complies with the requirements set forth*

25   *in Section 1561 of the Evidence Code. Admission of that information into evidence shall be subject*

26   *to Section 1562 of the Evidence Code.*

Page 5 of 12

WarrantID: 000048163

**EXHIBIT B-5**

PANUCO_00000034

| | |
|---|---|
| 1 | **Pursuant to Penal Code 1546.1(d)(2)** The warrant shall require that any information |
| 2 | obtained through the execution of the warrant that is unrelated to the objective of the warrant |
| 3 | shall be sealed and not subject to further review, use, or disclosure without a court order. A court |
| 4 | shall issue such an order upon a finding that there is probable cause to believe that the |
| 5 | information is relevant to an active investigation, or review, use, or disclosure is required by state or |
| 6 | federal law. |
| 7 | **Pursuant to Penal Code 1546.2 (a)** any government entity that executes a warrant that |
| 8 | includes the production of or access to electronic communication / device information shall serve |
| 9 | upon, or deliver to by registered or first-class mail, electronic mail, or other means reasonably |
| 10 | calculated to be effective, the identified targets of the warrant, a notice that informs the recipient |
| 11 | that information about the recipient has been compelled or requested, and states with |
| 12 | reasonable specificity the nature of the government investigation under which the information is |
| 13 | sought. The notice shall include a copy of the warrant. **The notice shall be provided at the end of a** |
| 14 | **90 day delay as authorized by the above listed order.** |
| 15 | **End of ATTACHMENT B** |
| 16 | |
| 17 | |
| 18 | **SUPERIOR COURT OF THE FRESNO JUDICIAL DISTRICT** |
| 19 | **COUNTY OF FRESNO, STATE OF CALIFORNIA** |
| 20 | **AFFIDAVIT IN SUPPORT OF SEARCH WARRANT** |
| 21 | |
| 22 | **STATEMENT OF EXPERTISE** |
| 23 | I, Jovan Tamayo, badge #834 (Affiant), am a duly qualified Peace Officer employed |
| 24 | by the Fresno County Sheriff's Office and have been employed as a full-time sworn Peace Officer |
| 25 | in the State of California for the past 7 years. Your Affiant is currently a Deputy III and is assigned to |
| 26 | the Fresno County Sheriff's Office Abuse Unit as an Internet Crimes Against Children Detective. My |
| 27 | duties are to investigate crimes involving the online sexual exploitation of children that occur within |
| 28 | the Fresno County Jurisdiction. Your Affiant has completed training in Cyber Exploitation and Child |

WarrantID: 000046763

**EXHIBIT B-6**

PANUCO_00000035

1    Sexual Abuse and Exploitation. Training included investigative techniques, including proper

2    methods for interviewing Children of sexual abuse and exploitation.

3         Prior to this assignment your Affiant was assigned to the Fresno County Sheriff's Office K-9

4    Unit as a K-9 handler for 5 years. During that time your Affiant attended a P.O.S.T approved canine

5    school for approximately 240 hours of training. Training included identifying crimes, understanding

6    laws of arrest pertaining to canine searches and apprehension, current case law, documenting

7    reports and injuries, canine liability, and search and oppression tactics while using a canine for

8    lawful purposes. The completion of canine handler school included a proficiency exam to be

9    certified. Your Affiant also completed a P.O.S.T certification in Explosive Ordinance Detection. Your

10   Affiant certified yearly in both canine apprehensions as well as Explosive Ordinance Detection to

11   keep his certifications up to date.

12        Prior to that, your Affiant was assigned to the to the Fresno County Sheriff's Office Homicide

13   Task Force on the Patrol Tactical Team for one year.  My primary duty on the Homicide Task Force

14   was to patrol the City of Mendota and investigate the criminal street gang Mara Salvatrucha (MS-

15   13).  I investigated numerous gang related offenses including assaults, homicides and drug sales. I

16   have participated in a Federal and State Wire regarding MS-13. While assigned to the Homicide

17   Task Force, my primary duties included gang member identification, gang intelligence gathering,

18   criminal arrests, communication with State Parole and County Probation Offices and providing

19   gang information to detectives from local, state and federal law enforcement agencies.  Your

20   Affiant completed Electronic Surveillance training which included investigative techniques, legal

21   requirements, and practical aspects of interception of private wire communications.

22        Prior to that I served as a Patrol Deputy for 1 year.  During that time your Affiant completed

23   a 15-week Field Training Program. Through my training and experience as a police officer, I have

24   investigated sexual assaults, narcotic offenses for possession, under the influence, and sales, felony

25   and misdemeanor batteries and assaults, robberies, burglaries, grand/petty thefts, and fraud

26   investigations.  I have conducted numerous investigations and have arrested suspects in

27   connection with various Vehicle Code, Penal Code, Health and Safety Code, Welfare and

WarranID: 000046163

**EXHIBIT B-7**

PANUCO_00000036

1   Institution Code and Juvenile Law violations. I have processed numerous crime scenes and

2   collected various items of evidence and preserved evidence for use in identifying suspects,

3   victims, involved parties and property. I have also prepared and used photo line-ups numerous

4   times to identify suspects. I have had numerous hours of investigative training throughout my

5   career.

6          Based upon your affiant's knowledge, experience, and training in child exploitation

7   investigations, and the training and experience of other law enforcement officers with whom your

8   affiant has had discussions, he knows there are certain characteristics common to individuals

9   involved in the receipt, distribution, and collection of child exploitation material. Child exploitation

10  material collectors may receive sexual gratification, stimulation, and satisfaction from contact with

11  children or from fantasies they may have viewing children engaged in sexual activity or in sexually

12  suggestive poses.

13         This satisfaction may come from viewing children in person, in photographs, other visual

14  media, or from literature describing such activity. Collectors of child exploitation material often

15  collect sexually explicit or suggestive materials in a variety of media including photographs,

16  magazines, motion pictures, videotapes, books, drawings, or other visual media. Child

17  pornography collectors not only use these materials for their own sexual arousal and gratification,

18  but they have also been known to use these materials to lower the inhibitions of children they are

19  attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual

20  acts.

21         Based on the details of this investigation outlined in this affidavit, your affiant believes that

22  the person(s) described in the attachment to this search warrant exhibits the common

23  characteristics described above of someone involved in the distribution, receipt, possession, or

24  collection of child exploitation material.

25         Having been first duly sworn, your affiant does hereby depose and say that he has

26  probable cause to believe, a violation of California Penal Code Section 311.11(a) has been

27  committed by unknown suspect and execution of this warrant will yield; property or things that are

**EXHIBIT B-8**

PANUCO_00000037

1 evidence that tends to show that sexual exploitation of a child or possession of matter depicting

2 sexual conduct of a person under the age of 18 years, in violation of California Penal Code 311.11

3 has occurred or is occurring. The following paragraphs document the investigation of this matter

4 and establish probable cause for the issuance of a search warrant.

5

6 **STATEMENT OF PROBABLE CAUSE**

7

8 On 03/04/24 while assigned to the Central CA Internet Crimes Against Children Task Force, I

9 was assigned Cybertip# 188008527 for follow up. On 02/22/24, Discord Inc. submitted a report to

10 the National Center for Missing and Exploited Children (NCMEC) regarding an incident of child

11 sexual abuse material being possessed or transmitted using their service.  The report was reviewed

12 by NCMEC staff on 02/22/24, it is believed to have occurred in Fresno, CA within Fresno County.

13 The report was subsequently assigned to the Central California Internet Crimes Against Children

14 Taskforce under Cybertip# 18008527. The incident was ultimately assigned to your Affiant for

15 further investigation.

16

17 While NCMEC CyberTips contain many details of the users or persons involved in the incident, they

18 often do not contain a complete explanation of exactly how child sexual abuse material was

19 uploaded, downloaded, sent, or received using the Discord Inc. service.  As such, not every detail

20 about the incident is known to your Affiant.  Your Affiant does know that Cybertip# 188008527

21 contained user information for the person(s) involved as collected by Discord Inc. The report

22 stated that a person whose true identity has yet to be confirmed was using the following profile

23 information:

24

25 **Suspect(s) Discord Inc. Account:**

26 **Phone Number:** +███████████

27 **Screen/Username:** mike12083096

28 **ESP User ID:** 1076683047635779594

29

30 The report also included the file(s) provided by Discord Inc. that they believed contained child

31 sexual abuse material. Discord Inc. viewed the entire contents of the uploaded files prior to

32 submitting this Cyber Tip to NCMEC. Your Affiant reviewed the file(s)s, and the following is a written

33 description of the file(s) provided by Discord Inc. below:

Warrant ID: 000046163

**EXHIBIT B-9**

PANUCO_00000038

1

2

3  File Name: **IMG_1739.gif**

4  File Description: The file contains 90 photos all which depicts a Caucasian female juvenile that is

5  fully nude. The juvenile is in an upright sitting position on the floor with her legs spread and knees

6  bent, exposing her breasts, vagina, and anus. Photos numbered 1 through 30 show the juvenile

7  using the handled end of a toothbrush to penetrate her anus. Photos 31 through 60 the juvenile

8  using her right hand to caress and rub her vagina. Photos 61 through 90 show the juvenile using the

9  handled end of a toothbrush to caress and rub her vagina. The child appears to be approximately

10  10-12 years old based on her physical development. Based on my training and experience these

11  photos are intended to arouse its viewer.

12

13  Based upon your Affiant's training, experience, and conversations that your Affiant had with other

14  Law Enforcement Officers, your Affiant knows that Electronic Service Providers such as Discord Inc.

15  and AT&T typically collect and maintain records that are relevant to criminal investigations such

16  as, IP address logs, and stored media. Location's information, and other records relevant to the

17  investigation. Subscriber and billing records can establish dominion and control over the

18  computers or digital devices located at a premises.

19

20  Additionally, I know from my training and experience that those who subscribe to internet service

21  providers and electronic service providers, often provide personal information that may be used in

22  the identification of a person's account, identity, location, service information, and dates related

23  to said service. Such information may contain, but not limited to: social security numbers, names,

24  addresses, dates of birth, phone numbers, account holder information, service transfer information,

25  place of employment. Said information may also contain a list of those who are authorized to

26  make changes to said accounts.

27

28  Based on the aforementioned information, Your Affiant has reason to believed that an unknown

29  suspect in the Fresno area used the services provided by Discord Inc. and AT&T to upload obscene

30  matter as defined in PC 311 to the internet.

31

32  I am requesting content from Discord Inc., and AT&T because I believe I will recover evidence of

33  PC 311.11(a) for possession of obscene matter. Your affiant knows that Discord Inc., and AT&T

34  maintain records related to the mobile phones and digital devices used to access their services as

**EXHIBIT B-10**

PANUCO_00000039

1    their normal course of business.  These device attributes such as IMEI uniquely identify individual

2    devices and can be valuable in criminal investigations to help identify the true identity of suspect

3    **Discord Inc.** Username: **mike12083096**

4    The time period requested **08/22/23 to 03/04/24** it covers six months before the date of the

5    incident provided by Discord Inc. to establish dominion and control, up to the date of this warrant

6    submitted.

7

8    **Request For Warrant Return Extension Order**

9    Your Affiant knows though prior experience with Internet Service Providers, conversations with

10    other law enforcement officers, and previous law enforcement training that these companies

11    often cannot promptly comply with search warrants for a variety of reasons.  Though the records

12    sought in this warrant are generally stored digitally, access to those records is restricted to a few

13    representatives and only upon the order of their legal department's approval.  These issues are

14    further compounded by the volume of requests that Internet Service Providers receive from law

15    enforcement agencies across the country, and in some instances, law enforcement agencies

16    from across the world.  Furthermore, your Affiant knows that Internet Service Providers hold an

17    extremely high number of records and that it can be common to receive hundreds of pages of

18    documents, if printed, in response to a search warrant.  For these reasons, your Affiant believes

19    that it is unlikely they will receive the requested records within the time required to return the

20    warrant and records to this Court.  Your affiant therefore requests this Court issue an extension of

21    up to 90 days to return the warrant and records aligning with the expiration of the Non-Disclosure

22    Order. However, your affiant assures the Court that the warrant and records will be returned

23    promptly upon their receipt. In the event that the requested records are not provided to your

24    affiant within 90 days of the execution of this search warrant, your Affiant shall return a notice

25    informing the Court of the Internet Service Providers failure to produce records and may choose to

26    petition for an extension on or before **06/03/24.**

27

Warrant ID: 000046163

**EXHIBIT B-11**

PANUCO_00000040

1 **Order to Seal Non-Evidentiary Information**

2 As required by privacy act provisions, items that are within the scope of this warrant will be copied

3 and retained by investigative agency. Investigating agents will then seal any information from the

4 device that is unrelated to the objective of the warrant (does not fall within the scope of the

5 Attachment(s)) and will not further review the information pending an order from the Court.

6

7

8 **Authenticity of Record ORDER**

9 In compliance with privacy act provisions, your Affiant requests that the Service Provider listed in

10 the Attachment(s) provide a valid "Authenticity of Records" document consisting of an affidavit

11 which meets requirements of California Evidence Code section 1561 and that the document be

12 returned to the Affiant along with a copy of the requested records.

13 I have reasonable cause to believe that grounds for the issuance of a search warrant exist, as set

14 forth in Section 1524 of the Penal Code of the State of California, based upon the aforementioned

15 information, facts and circumstances. I therefore request that the court issue a warrant authorizing

16 a search of the premises described in the Attachment(s) "A" for the items listed in the

17 Attachment(s) "B".

18 I declare under penalty of perjury that the forgoing is true and correct.

19     I request that this search warrant be issued, based on the above facts for the seizure of said

20 electronic data or any part, therefore. I swear under penalty of perjury that the foregoing is true

21 and correct.

22 Executed in Fresno, California, on this **5ᵗʰ day of March 2024.**

23

24     /S/ J. Tamayo A812

25 Detective Jovan Tamayo (Affiant)

26

WarrantID: 000046163

**EXHIBIT B-12**

PANUCO_00000041

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

**SEALED**



FILED
Apr 02, 2024
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

█████████, FRESNO, CA 93705; THE
PERSON OF TIMOTHY PANUCO; AND 2003 WHITE
CHEVY SEDAN (CA LICENSE PLATE █████)

Case No.   1:24-sw-00076-EPG

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, attached hereto and incorporated herein by this reference.

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorproated hrein by this reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2252(a)(2) | Distribution and Receipt of Material Involving the Sexual Exploitation of Minors |
| 18 USC 2252(a)(4)(B) | Possession of Material Involving the Sexual Exploitation of Minors |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jackie Lovato, Special Agent, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__telephone consistent with Fed. R. Crim. P. 41(d)(3)__ *(specify reliable electronic means).*

Date:   **Apr 2, 2024**

*Judge's signature*

City and state:   Fresno, California

Hon. Erica P. Grosjean, U.S. Magistrate Judge
*Printed name and title*

**EXHIBIT C-1**

PANUCO_00000043

PHILLIP A. TALBERT
United States Attorney
BRITTANY GUNTER
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: <br> ███████████, **FRESNO, CA 93705**; **THE PERSON OF TIMOTHY PANUCO**; AND **2003 WHITE CHEVY SEDAN (CA LICENSE PLATE** ███████**)** | CASE NO. <br><br> AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT |

I, Jackie Lovato, a Special Agent with U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) in Fresno, California, being duly sworn, depose and state as follows:

## I.     INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with Homeland Security Investigations (HSI) and have been since December 2018.  I have attended the Federal Law Enforcement Training Center (FLETC) and completed the Criminal Investigator Training Program (CITP) and HSI Special Agent Training program training in areas including criminal investigations and constitutional law.  I am currently assigned to the Fentanyl Overdose Resolution Team (FORT), which is comprised of Special Agents and Task Force officers from HSI, the Drug Enforcement Administration (DEA), the Fresno Police Department (FPD), the Clovis Police Department (CPD), and Fresno County Sheriff's Office (FSO).  FORT responds to and investigates suspected fentanyl overdoses, fatal and non-fatal, and conducts investigations to identify the source of supply.  I was previously assigned to the Central Valley Internet Crimes Against Children

**EXHIBIT C-2**

PANUCO_00000044

(ICAC) Task Force and Child Exploitation group.  I have planned and executed multiple federal search warrants including search warrants for accounts involved in child exploitation.

2.    As a Special Agent with HSI, I have received training in the investigation and prosecution of violations of various federal laws, including those related to child pornography.  I have received specialized training related to crimes against children.  I have interviewed multiple victims and witnesses for investigations involving child sexual exploitation, child pornography, and other crimes against children.  I have observed and reviewed thousands of examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media.

3.    As a federal agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.  Moreover, I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C. §§ 2251 (sexual exploitation of children), 2252 (certain activities relating to material involving the sexual exploitation of minors), and 2422 (coercion and enticement), and I am authorized by law to request a search warrant.

4.    This affidavit is submitted in connection with an investigation into the receipt, distribution, and possession of material involving the sexual exploitation of minors in violation of §§ 2252(a)(2) and 2252(a)(4)(B).  Specifically, HSI is investigating the use of a computer, computers, or other electronic devices by **Timothy PANUCO (PANUCO)** to distribute material involving the sexual exploitation of minors through Discord, a chat service application.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41.  This affidavit seeks authorization for the search of property belonging to **PANUCO**, more specifically the following:

a)    The residence located at ███████████ Fresno, CA 93705 (**SUBJECT PREMISES**);

b)    The person of **Timothy PANUCO (PANUCO)**; and

c)    2003 white Chevrolet four door sedan bearing California license plate ██████ (**CHEVY**),

property which is described in more detail in Attachment A.

5.    Based on the facts set forth below, probable cause exists to believe that multiple federal laws, specifically 18 U.S.C. §§ 2252(a)(2) (receipt and distribution of material involving the sexual

**EXHIBIT C-3**

PANUCO_00000045

exploitation of a minor and attempt) and (a)(4)(B) (possession of material involving the sexual exploitation of a minor and attempt) have been violated by **PANUCO**. This affidavit therefore requests authority to search the residence at ████████████ Fresno, CA 93705 (**SUBJECT PREMISES**), the person of **Timothy PANUCO**, and a 2003 white Chevrolet four door sedan bearing California license plate ████████ (**CHEVY**) operated by **PANUCO** for evidence, contraband, fruits, and instrumentalities of the suspected offenses. The search contemplated by the application will include all rooms, attics, basements, and all other parts of the **SUBJECT PREMISES**, as well as surrounding grounds, garages, storage rooms, or outbuildings of any kind, attached or unattached, located thereon and under the dominion and control of **PANUCO**.

6.     The information contained in this affidavit is based on my training, personal knowledge and experience, my review of records and documents, as well as information related to me by witnesses and other law enforcement personnel. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included every fact known to me concerning this investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause to search and seize the accounts and item(s) listed in Attachments A and B.

**II.     SUMMARY OF PROBABLE CAUSE**

7.     In February 2024, the Internet Crimes Against Children (ICAC) Task Force received a referral from the National Center of Missing and Exploited Children (NCMEC) about child exploitation material/pornography of a minor female being uploaded on to Discord, a chat service application for mobile phones and computers, from an Internet Protocol (IP) address out of the Fresno, California area. Investigators with the Homeland Security Investigations (HSI) Fresno office and ICAC initiated an investigation and discovered the IP address for the Discord user that uploaded the child pornography was subscribed to **Timothy Panuco** (**PANUCO**). Investigators also discovered the telephone number associated with the Discord account that uploaded the child pornography also returned to **PANUCO**.

8.     The investigative team subsequently conducted surveillance and observed **PANUCO** answer a phone with the phone number that was associated to the Discord account that uploaded the child pornography. The investigative team also observed **PANUCO** enter, exit, and appear to reside at the residence (**SUBJECT PREMISES**) associated with the IP address that was used to upload the child

**EXHIBIT C-4**

PANUCO_00000046

pornography to Discord.

<h2 style="text-align:center">III.    <u>APPLICABLE LAW</u></h2>

9.     This investigation concerns alleged violations of 18 U.S.C. § 2252, relating to material involving the sexual exploitation of minors.

a.     18 U.S.C. § 2252(a)(2) prohibits the knowing receipt and distribution, by computer or mail, of any visual depiction of minors engaging in sexually explicit conduct, if the visual depiction had been mailed, shipped, or transported in interstate or foreign commerce, or if it contains materials that have been so mailed, shipped, or transported, by any means, including by computer.

b.     18 U.S.C. § 2252(a)(4)(B) prohibits the possession of one or more matters that contain visual depictions of minors engaged in sexually explicit conduct, and that have been mailed, shipped, or transported in interstate or foreign commerce, of it is contains materials that have been so mailed, shipped, or transported, by any means, including by computer.

<h2 style="text-align:center">IV.    <u>RELEVANT DEFINITIONS</u></h2>

10.     The following definitions apply to this Affidavit and Attachment B:

a)     "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver.  Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation.  This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

b)     "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

c)     "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in

**EXHIBIT C-5**

PANUCO_00000047

sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

d) "Cloud storage," as used herein, is a form of digital data storage in which the digital data is stored on remote servers hosted by a third party (as opposed to, for example, on a user's computer or other local storage device) and is made available to users over a network, typically the Internet.

e) "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile phones, and other mobile devices. *See* 18 U.S.C. § 1030(e)(1).

f) "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, "thumb," "jump," or "flash" drives, which are small devices that are plugged into a port on the computer, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

g) "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data

**EXHIBIT C-6**

PANUCO_00000048

to make it inaccessible or unusable, as well as reverse the process to restore it.

h)  The "Domain Name System" or "DNS" is system that translates readable Internet domain names such as www.justice.gov into the numerical IP addresses of the computer server that hosts the website.

i)  "Encryption" is the process of converting data into a code in order to prevent unauthorized access to the data.

j)  A "hidden service," also known as an "onion service," is a website or other web service that is accessible only to users operating within the Tor anonymity network.

k)  "Hyperlink" refers to an item on a web page which, when selected, transfers the user directly to another location in a hypertext document or to some other web page.

l)  The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

m)  "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

n)  An "Internet Protocol address" or "IP address," as used herein, refers to a unique numeric or alphanumeric string used by a computer or other digital device to access the Internet. Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination. Most Internet Service Providers ("ISPs") control a range of IP addresses. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer or device every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet. ISPs typically maintain logs of the subscribers to whom IP addresses are

AFFIDAVIT

6

**EXHIBIT C-7**

PANUCO_00000049

assigned on particular dates and times.

o)     "Matter" means any book, magazine, newspaper, or other printed or written material, or any picture, drawing, photograph, motion picture, or other pictorial representation, or any statue or other figure, or any recording, transcription, or mechanical, chemical, or electrical reproduction, or any other article, equipment, machine, or mater.  "Matter" also means live or recorded telephone messages if transmitted, disseminated or distributed as part of a commercial transaction.

p)     "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

q)     "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

r)     "Remote computing service," as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

s)     "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any person.

t)     A "smartphone" is a cellular phone that performs many of the functions of a computer, typically having a touchscreen interface, Internet access, and an operating system capable of running downloaded applications.  Common examples include the Apple iPhone and the Samsung Galaxy.

u)     A "storage medium" is any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

v)     The "Tor network" is a computer network available to Internet users that is

EXHIBIT C-8

PANUCO_00000050

designed specifically to facilitate anonymous communication over the Internet. The Tor network attempts to do this by routing Tor user communications through a globally distributed network of relay computers, along a randomly assigned path known as a "circuit."

w) "URL" is an abbreviation for Uniform Resource Locator and is another name for a web address. URLs are made of letters, numbers, and other symbols in a standard form. People use them on computers by clicking a pre-prepared link or typing or copying and pasting one into a web browser to make the computer fetch and show some specific resource (usually a web page) from another computer (web server) on the Internet.

x) "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

y) A "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

z) "Wireless Network Technology", or "Wi-Fi", is a family of wireless network protocols for local area networking of devices and internet access that allow nearby digital devices to exchange data by radio waves. Wi-Fi is widely used with in home and small office networks to link desktop and laptop computers, tablets, smartphones, smart TVs, printers, speakers and numerous other items.

## V. PROBABLE CAUSE

11. In February 2024, the Central Valley Internet Crimes Against Children Taskforce (ICAC) received information from the National Center for Missing and Exploited Children (NCMEC) about an individual uploading child pornography to Discord, a chat service application for mobile phones and computers. The information revealed the IP address 76.20.76.73 was associated with the upload of the child pornography to Discord. The information also revealed the Discord username "mike12083096" uploaded the images of child pornography on to the Discord application. The images of child

**EXHIBIT C-9**

PANUCO_00000051

pornography featured a female child that appeared to be between the ages of 10-12 years old. Discord log information indicated user "mike12083096" had an associated telephone number ███████, and that "mike12083096" uploaded the child pornography utilizing the IP address 76.20.76.73, which resolved out of the Fresno, California area.

12. Fresno County Sheriff's Office (FSO) ICAC Detective J. Tamayo and your affiant viewed the images uploaded to Discord by "mike12083096" on February 22, 2024, at approximately 03:07:08 Universal Time Coordinated (UTC). Based on our training and experience, Detective Tamayo and your affiant believe the following depiction of file name IMG_1739.gif, uploaded by "mike12083096," meets the definition of child pornography, pursuant to 18 U.S.C. § 2256(8), and a minor engaged in sexually explicit conduct, within the meaning of 18 U.S.C. § 2256(2):

The file contained 90 photos all which depict a fully nude female that is approximately 10-12 years old based on her physical development. The minor female is in an upright sitting position on the floor with her legs spread and knees bent, exposing her breasts, vagina, and anus. Photos numbered 1 through 30 show the minor female using the handled end of a toothbrush to penetrate her anus. Photos 31 through 60 show the minor female using her right hand to caress and rub her vagina. Photos 61 through 90 show the minor female using the handled end of a toothbrush to caress and rub her vagina.

13. On March 5, 2024, a California Superior Court Judge in and for the County of Fresno, authorized the disclosure of the subscriber information for AT&T telephone number ███████ (Target Telephone ███, **TT**███) and of the Discord account associated to phone number **TT**███, ESP User ID 1076683047635779594, and username "mike12083096."

14. On March 13, 2024, AT&T provided the following subscriber information for telephone number (559) 371-0817 (**TT**███):

Activation Date: 2/14/2018

Contact Name: Timothy Panuco

Telephone Number: ███████

Address: ███████ Fresno, CA 93704

15. On March 18, 2024, a summons was sent to Comcast for the subscriber information for

**EXHIBIT C-10**

PANUCO_00000052

the IP address 76.20.76.73 used on February 22, 2024, at 03:07:08 UTC.  This is the date on which the above-described child pornography was uploaded to Discord.  On March 18, 2024, Comcast provided the following information:

Subscriber Name: Timothy Panuco

Subscriber Address: ▮▮▮▮▮▮▮▮▮▮ Fresno CA 93705

Telephone Number : ▮▮▮▮▮▮▮▮

Account Number : 8155500298332896

Start of Service: 10-31-2023

Email User ID: ▮▮▮▮▮▮▮▮▮▮▮

16.     On March 19, 2024, Discord provided information related to "User ID 1076683047635779594" and username "mike12083096#0."  It should be noted all usernames contained a "#0" after the root name, on the results from Discord.  The following are the results from Discord:

User ID: 1076683047635779594

Username: mike12083096#0

Email: Not found

Phone number: ▮▮▮▮▮▮▮

Registration Time (UTC): 2023-02-19 01:54:02

Last Seen Time (UTC): 2024-02-22 03:17:15

Last Seen IP: 76.20.76.73

17.     Discord also provided direct messages that were exchanged between Username "mike12083096#0" and "deleted_user_4af801964cb1#0" on February 22, 2024:

AFFIDAVIT

**EXHIBIT C-11**

PANUCO_00000053

| Timestamp | Username | Contents |
|---|---|---|
| 2024-02-22 03:04:43.289000+00:00 | mike12083096#0 | Send a vid for vid then |
| 2024-02-22 03:04:30.836000+00:00 | mike12083096#0 | Yeah I have vids just sending random stuff |
| 2024-02-22 03:02:41.302000+00:00 | mike12083096#0 | Oh ok sorry my turn |
| 2024-02-22 03:02:23.970000+00:00 | mike12083096#0 | Your turn |
| 2024-02-22 03:00:59.385000+00:00 | mike12083096#0 | Ok |
| 2024-02-22 03:00:48.977000+00:00 | mike12083096#0 | You got more |
| 2024-02-22 03:00:34.685000+00:00 | mike12083096#0 | I have a few sites you can check out lots of 5 to 12 yo girls |
| 2024-02-22 02:59:42.238000+00:00 | mike12083096#0 | What site you go to for those vids |
| 2024-02-22 02:59:04.535000+00:00 | mike12083096#0 | What sure you go to for those vids |
| 2024-02-22 02:57:11.204000+00:00 | mike12083096#0 | Your turn |
| 2024-02-22 02:56:40.594000+00:00 | mike12083096#0 | Yes |
| 2024-02-22 02:55:42.915000+00:00 | mike12083096#0 | Ok |
| 2024-02-22 02:55:13.667000+00:00 | mike12083096#0 | I want kids not teens |
| 2024-02-22 02:54:14.645000+00:00 | mike12083096#0 | Your turn |
| 2024-02-22 02:54:04.728000+00:00 | mike12083096#0 | I got more of her nude |

18.     In my training and experience, knowledge of this investigation, and speaking with other law enforcement officers, I believe the above messages confirmed username "mike12083096#0" was sending and requesting child pornography by stating, "Send a vid for vid then," followed by, "I have a few sites you can check out lots of 5 to 12 yo girls," and "I want kids not teens."  I also believe the user of the "mike12083096#0" Discord account exhibited knowledge of multiple sites to obtain child pornography involving five- to twelve-year-old children.

19.     Discord provided another direct message exchange between Discord username "mike12083096#0" and "keshon23#0" on December 31, 2023, in which username "mike12083096#0" provided "keshon23#0" **TT** ███:

| Timestamp | Username | Contents |
|---|---|---|
| 2023-12-31 01:10:14.908000+00:00 | keshon23#0 | https://discord.com/channels/894124622084194334/1134998616235323513 |
| 2023-12-31 00:54:46.015000+00:00 | mike12083096#0 | DS7DRL |
| 2023-12-31 00:52:27.868000+00:00 | mike12083096#0 | 5593710817 |

20.     The context of the above messages are unknown, however your affiant believes username "keshon23#0" provided a Discord channel to username "mike12083096#0." A google inquiry of "DS7DRL" revealed a reference to a car headlight. Of note, username "mike12083096#0" provided **TT** ▉ to username "keshon23#0." In my training and experience, knowledge of this investigation, and speaking with other law enforcement officers, I believe the above message confirmed the user of the Discord account with username "mike12083096#0" was associated to and had access to **TT** ▉.

***PRIOR SEX OFFENDER CONVICTION AND REPORTING***

21.     In September 2019, **PANUCO** was arrested after ICAC detectives and your affiant conducted an investigation regarding child pornography that was upload from an IP address that returned to **PANUCO**'s residence at ▉▉▉▉▉ Fresno, CA. Agents ultimately located and seized tens of thousands of material containing child pornography from the residence. **PANUCO** was subsequently interviewed and admitted to possessing the material. **PANUCO** subsequently pled guilty and was sentenced to 365 days jail for violating California Penal Code § 311.11 (possession of child pornography). **PANUCO** was ordered and required to register as a sexual offender with the state of California Sex and Arson Registry (CSAR) and has been compliant.

22.     Law enforcement checks were conducted on **PANUCO**, which revealed **PANUCO** provided the address ▉▉▉▉▉, Fresno, CA 93705 (**SUBJECT PREMISES**) and the telephone number ▉▉▉▉▉ (**TT** ▉) as his address and telephone number as part of his required sex offender registration as of November 2023. It should be noted again, the internet service address and contact phone number provided by AT&T and Comcast are the same phone number and address that **PANUCO** provided to law enforcement and annotated in the sex offender registry. **PANUCO** also

listed Belmont Memorial Park located at 201 N. Teilman Ave Fresno, CA 93706 as his employer.

***SURVEILLANCE CONDUCTED AT PANUCO'S EMPLOYMENT AND REGISTERED SEX OFFENDER ADDRESS***

23.     On March 18, 2024, at approximately 5:45 PM, your affiant drove by **PANUCO**'s sex offender registration and Comcast subscriber address located at ██████████ Fresno, CA 93705 (**SUBJECT PREMISES**) and observed two white vehicles parked side by side in the driveway. One of the vehicles was a 2003 white four door Chevrolet sedan bearing California license plate ██████ (**CHEVY**), registered to another individual with a residence in Atascadero, California.  Law enforcement checks revealed no relation between **PANUCO** and the registered owner of the vehicle and revealed no relation between the registered owner of the vehicle and the **SUBJECT PREMISES**.

24.     On March 19, 2024, at approximately 9:21 AM, your affiant and Detective Tamayo drove to Belmont Memorial Park located at 201 N. Teilman Ave Fresno, CA 93706.  Belmont Memorial Park is **PANUCO**'s employer per his sex offender registration.  Your affiant observed an employee parking area located near the southwest corner of the park and drove into the parking area.  Detective Tamayo and your affiant observed the **CHEVY** parked in the employee parking area.

25.     On March 20, 2024, at approximately 8:15 AM, your affiant drove to Belmont Memorial Park located and observed a male holding a shovel near a trailer/tractor within the park.  Your affiant immediately recognized **PANUCO** after comparing the male with the shovel to a California driver's license and social media photograph of **PANUCO**.  At approximately 8:18 AM, your affiant called ██████████ (**TT**██) from a blocked number.  Contemporaneously, your affiant video recorded **PANUCO** while he was utilizing a shovel and observed **PANUCO** remove a work glove from his right hand, retrieve a cellphone from his front right pocket, place the phone to his mouth area, and say "hello." Your affiant did not respond, and **PANUCO** again held the phone to his mouth and said "hello." Your affiant then hung up the telephone.

26.     In my training and experience, I believe **PANUCO** demonstrated possession, control, and ownership of **TT**██, as he retrieved a phone associated with the **TT**██ phone number from his clothing and answered the telephone.

27.     On March 20, 2024, at approximately 2:00 PM, FSO ICAC Detectives F. Maldonado and

EXHIBIT C-14

PANUCO_00000056

Detective Tamayo conducted surveillance of locations associated with **PANUCO**. Detective

Maldonado was conducting surveillance at Belmont Memorial Park, and Detective Tamayo conducted

surveillance at **PANUCO**'s sex offender registration address located at ███████████ Fresno, CA

93705 (**SUBJECT PREMISES**). Detective Maldonado observed the **CHEVY** parked in the staff

parking area at Belmont Memorial Park. Detective Maldonado also observed **PANUCO** wearing blue

jeans, a green jacket, and a yellow reflective vest shoveling dirt. Detective Maldonado was familiar

with **PANUCO**'s appearance after observing **PANUCO**'s California driver's license and social media

photograph. At approximately 4:00 PM, Detective Maldonado advised Detective Tamayo that

**PANUCO** was leaving Belmont Memorial Park in in the **CHEVY**. Detective F. Maldonado followed

**PANUCO** and maintained observation of the **CHEVY** operated by **PANUCO** from Belmont Memorial

Park to the **SUBJECT PREMISES**.

28.　　Detective Tamayo had already established surveillance at the **SUBJECT PREMISES**

and observed **PANUCO** arrive in the **CHEVY** and park in the driveway of the residence. Detective

Tamayo also observed **PANUCO** exit the **CHEVY**, walk towards the residence, and enter a pedestrian

door, located on the eastside of the **SUBJECT PREMISES**.

29.　　In my training and experience, knowledge of this investigation, and speaking with other

law enforcement officers, I believe based on the surveillance observations of the **CHEVY** being located

at the **SUBJECT PREMISES** and operated by **PANUCO** to and from his work location, that

**PANUCO** is the operator of the **CHEVY** and **PANUCO** resides at the **SUBJECT PREMISES**. I also

believe due to **PANUCO** entering through a secondary entrance that **PANUCO** demonstrated dominion

and control over the **SUBJECT PREMISES**.

**VI.　　CHARACTERISTICS COMMON TO INDIVIDUALS WHO SOLICIT, RECEIVE,**

**AND/OR POSSESS IMAGES OF MINORS ENGAGED IN SEXUALLY EXPLICIT CONDUCT**

30.　　Based on my previous investigative experience related to child sexual exploitation

investigations, and the training and experience of other law enforcement officers with whom I have had

discussions, I know there are certain characteristics common to individuals who create, solicit, receive,

and/or possess images of child sexual exploitation:

　　　　　　　a.　　Individuals who create, solicit, receive, and/or possess images of child sexual

**EXHIBIT C-15**

PANUCO_00000057

exploitation often receive sexual gratification, stimulation, and satisfaction from contact with children. They can also receive the same response from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b.  Individuals who create, solicit, receive, and/or possess images of child sexual exploitation may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children often use these materials for their own sexual arousal and gratification. They also may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.  Individuals who create, solicit, receive, and/or possess images of child sexual exploitation almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location.

d.  Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

e.  Likewise, individuals who create, solicit, receive, and/or possess images of child sexual exploitation often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence or inside the collector's vehicle, to enable the individual to view the collection, which is valued highly.

f.  Individuals who create, solicit, receive, and/or possess images of child sexual exploitation also may correspond with and/or meet others to share information and

materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

g.     Individuals who create, solicit, receive, and/or possess images of child sexual exploitation prefer not to be without their images of child exploitation for any prolonged time period.  This behavior has been documented by law enforcement officers involved in the investigation of child exploitation offenses throughout the world.

31.     Based on the above along with his previous conviction, I believe that **PANUCO** likely displays characteristics common to individuals who create, solicit, receive, and/or possess images of child sexual exploitation.

## VII.     BACKGROUND ON CHILD PORNOGRAPHY, COMPUTERS, AND THE INTERNET

32.     I have had training focused on the investigation of computer-related crimes.  I have also interacted with and learned from other law enforcement officers who also have received specialized training in the investigation of crimes related to sexual exploitation of minors using computers, the internet, and social media applications.  Based on my training, experience, and knowledge, I know the following:

a.     Computers and digital technology have dramatically changed the way in which individuals interested in child sexual exploitation material interact with each other. Computers basically serve four functions in connection with child sexual exploitation: production, communication, distribution, and storage.

b.      People interested in images of child sexual exploitation can now transfer printed photographs into a computer-readable format with a scanner.  And with the advent of digital cameras and smartphones with cameras, when a photograph is taken it is saved as a digital file that can be directly transferred to a computer by simply connecting the camera or smartphone to the computer.

AFFIDAVIT

16

**EXHIBIT C-17**

PANUCO_00000059

c.    In the last ten years, the resolution of pictures taken by digital cameras and smartphones has increased dramatically.  Digital images have become sharper and crisper.  Photos taken on a digital camera or smartphone may be stored on a removable memory card in the camera or smartphone.  These memory cards often store 32 gigabytes of data or more, which provides enough space to store thousands of high-resolution photographs and/or hours of video footage.  Video camcorders, which once recorded video onto tapes or mini-CDs, now can save video footage in a digital format directly to a hard drive in the camera.  The video files can be easily transferred from the camcorder to a computer.

d.    A modem allows any computer to connect to another computer through the use of a telephone, cable, or wireless connection.  Electronic contact can be made to literally millions of computers around the world.  The ability to produce child sexual abuse imagery easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child sex abuse material.  This material can be transferred via electronic mail or through file transfer protocols (FTPs) to anyone with access to a computer and modem.  Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., Instant Messaging), and easy access to the internet, the computer is a preferred method of distribution and receipt of child pornographic materials.

e.    The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography.  The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years.  These drives can store thousands of images at very high resolution.  In addition, there are numerous options available for the storage of computer or digital files.  One terabyte external and internal hard drives are not uncommon.  Other media storage devices include CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices which are plugged into a port on the computer.  It is extremely easy for an individual to take a photo or a video with a digital

camera or camera-bearing smartphone, upload that photo or video to a computer or online website or storage platform, and then copy it (or any other files on the computer) to any one of those media storage devices. Compact discs and digital video discs are somewhat different in that special software must be used to save or "burn" files onto them. Media storage devices can easily be concealed and carried on an individual's person.

f. The Internet affords individuals several different venues for obtaining, viewing, and trading child sexual abuse imagery in a relatively secure and anonymous fashion.

g. Individuals also use online resources to retrieve and store child pornography, including services offered by internet portals such as Yahoo! and Hotmail. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Even in cases where online storage is used, however, evidence of child sexual exploitation can be found on the user's computer or external media in most cases.

h. As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

## VIII. COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

33. As described above and in Attachment B, this application seeks permission to search for records that might be found on the **SUBJECT PREMISES**, on **PANUCO**'s person, or in the **CHEVY**, in whatever form they are found. One form in which the records might be found is data stored on a

**EXHIBIT C-19**

PANUCO_00000061

computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

34. *Probable cause.* I submit that if a computer or storage medium is found on the **SUBJECT PREMISES**, on **PANUCO**'s person, or in the **CHEVY**, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

    a) Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b) Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c) Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

**EXHIBIT C-20**

PANUCO_00000062

d)  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

e)  I also know that when an individual uses a computer to function on the Tor network the individual's computer will generally serve both as an instrumentality for committing the crime, and as a storage medium for evidence of the crime.  A computer used to commit a crime of this type may contain evidence of how the computer was used (e.g., installation and use of the Tor browser and connections to Tor hidden services, login information, browsing to websites, forums, and online research regarding avoiding law enforcement detection online); data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

35.  *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the **SUBJECT PREMISES**, on **PANUCO**'s person, or in the **CHEVY** because:

a)  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use.  Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

**EXHIBIT C-21**

PANUCO_00000063

b) As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contains information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last,

**EXHIBIT C-22**

PANUCO_00000064

information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c) A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d) The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e) Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

36. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to

AFFIDAVIT

**EXHIBIT C-23**

PANUCO_00000065

ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction.  This is true because of the following:

    a)   The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.  Storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

    b)   Technical requirements.  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

    c)   Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

37.   *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose

**EXHIBIT C-24**

PANUCO_00000066

many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## V.    CONCLUSION

38.    Based on the foregoing, I have probable cause for a warrant to search the **SUBJECT PREMISES, PANUCO**'s person, and the **CHEVY**, described in Attachment A, and to seize the items described in Attachment B.

Respectfully submitted,

_Jackie Lovato_
Jackie Lovato
Special Agent
Homeland Security Investigations

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) on _____April 2, 2024_____.

_Erica P. Grosjean_
The Honorable Erica P. Grosjean
United States Magistrate Judge

Reviewed and approved as to form:

/s/ Brittany Gunter
Brittany Gunter
Assistant U.S. Attorney

# ATTACHMENT A

## Property to Be Searched

1. ██████████████ Fresno, CA 93705 (**SUBJECT PREMISES**)

The residence is a single-story house beige in color, has a brown wooden shingle roof, brown in color roof trim and white colored window trim paneling. There is a long driveway with a brown garage colored door. The numbers" ██ " are affixed to the north facing wall in black lettering with a white background. The following photograph of the **SUBJECT PREMISES** was taken by your affiant on March 19, 2024:



The premises further include all rooms, attics, basements, and all other parts of the **SUBJECT PREMISES**, as well as surrounding grounds, garages, storage rooms, or outbuildings of any kind, attached or unattached, located thereon and under the dominion and control of Timothy **PANUCO**, in which items in Attachment B may be found;

2. The person of Timothy **PANUCO**; and

3. 2003 White Chevrolet four door sedan bearing California license plate ████████ (**CHEVY**). The search is to include all internal and external compartments and all containers for the items listed in Attachment B.

**EXHIBIT C-26**

PANUCO_00000068

## ATTACHMENT B

## Items to be Seized

All evidence, in whatever form, that relates to or constitutes a violation of 18 U.S.C. §§ 2252(a)(2) and/or (a)(4)(B) (receipt, distribution, and possession of material involving the sexual exploitation of minors), including the following:

1.      Any child pornography or visual depictions of minors engaged in sexually explicit conduct. including the lascivious exhibition of the anus, genitals. or pubic area; as defined in 18 U.S.C. $ 2256(2)(A) and (8), in any format (including deleted files, emails, digital still and video files), including but not limited to:

> i. Evidence identifying the location from which images of child pornography were downloaded or uploaded, including the date and time;
>
> ii. Evidence identifying whether the image and/or video file(s) containing child pornography were viewed, including date and time of such viewing;
>
> iii. Evidence of whether images and/or video files were deleted, including date and time of deletion;
>
> iv. All metadata associated with any of the above described items;

a. Any child erotica:

b. Any information pertaining to any individual's sexual interest in minors;

c. Any items, images, documents, communications, records, or information pertaining to the possession, receipt, transmission, sale, purchase, trade, or distribution of child pornography or visual depictions of minors engaged in sexually explicit conduct;

d. Any records, information, or items relating to the sexual exploitation of children, including emails, chats, file sharing or other communications by any user of the device to communicate with other individuals for the purpose of obtaining, distributing, or trading child pornography;

e. Any information concerning the use of the email address ███████████████ including any information that may identify the user of the account;

f. Any information concerning the use of Discord and or username "mike12083096," including anything that may identify the person using these names;

g. Any information concerning use of the phone number ██████████, including billing records and

**EXHIBIT C-27**

PANUCO_00000069

records identifying the user of the phone number;

h. Records evidencing occupancy, ownership or use of the cellular phone, vehicle, and premises described above, as used above.

The terms "documents," "records," "correspondence," "information," and "data," include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2.    For any computer or storage medium and any computer, digital or electronic device, including cellphones or smartphones, or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (electronic device):

a. evidence of who used, owned, or controlled the electronic device at the time the things described in this warrant were created, edited, ordered, such as logs, phonebooks, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. evidence of software that would allow others to control the electronic device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. evidence of the lack of such malicious software;

d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e. evidence indicating the electronic device user's state of mind as it relates to the crime under investigation;

f. evidence of the attachment to the electronic device of other storage devices or similar containers for electronic evidence;

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data for the electronic device;

h. evidence of the times the electronic device was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the electronic device;

**EXHIBIT C-28**

PANUCO_00000070

j. documentation and manuals that may be necessary to access the electronic device or to conduct a
  forensic examination of the electronic device;

k. records of or information about Internet Protocol addresses used by the
  electronic device

l. evidence of all wireless networks, or telecommunication carrier services used to access the internet,
  and the dates and times of access:

m. records of or information about the electronic device 's internet activity, including firewall logs,
  caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that
  the user entered into any Internet search engine, and records of user-typed web addresses; and

n. contextual information necessary to understand the evidence described in this attachment.

**EXHIBIT C-29**

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| TIMOTHY PANUCO | ) | Case No.   1:24-cr-00090-JAM-BAM |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A HEARING OR TRIAL IN A CRIMINAL CASE

To:   Discord Inc. C/O CT CORPORATION SYSTEM (agent for service)
330 N Brand Blvd, Suite 700
Glendale, CA 91203

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place shown below to testify in this criminal case.  When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place of Appearance: | UNITED STATES DISTRICT COURT | Courtroom No.: | 8 / Hon. Barbara A. McAuliffe |
|---|---|---|---|
| | 2500 Tulare St. | Date and Time: | 02/26/2025 1:00 pm |
| | Fresno, CA 93721 | | |

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*:

See Attachment A.

***In lieu of personal appearance, please provide copies of the documents specified in Attachment A to counsel below on or before February 12, 2025***

*(SEAL)*

**Keith Holland, Clerk**

Date:  1/8/2025

*CLERK OF COURT*

*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   TIMOTHY PANUCO
, who requests this subpoena, are:

REED GRANTHAM
Assistant Federal Defender
2300 Tulare Street, Ste. 330
Fresno, CA 93721
559-487-5561
reed_grantham@fd.org

**EXHIBIT D-1**

Case No. 1:24-cr-00090-JAM-BAM

## PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)* DISCORD, INC.

was received by me on *(date)* 1/8/25 .

☑ I served the subpoena by delivering a copy to the named person as follows: Subpoena was sent via FedEx to Discord's Agent for Service of Process, CT Corporation, at 330 N. Brand #700 in Glendale, CA on *(date)* 1/13/25 @ 941 Am ; or

❏ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: 1/13/25

_____
*Server's signature*

VINCENT LEE, INVESTIGATOR

*Printed name and title*

2300 TULARE ST # 330, FRESNO, CA

*Server's address*

Additional information regarding attempted service, etc:

See attached confirmation from FedEx

**EXHIBIT D-2**

## ATTACHMENT A

Any contemporaneous records identifying the employee at Discord Inc. who viewed the entire contents of the file that was uploaded to Discord on February 22, 2024, that is the subject of the National Center for Missing and Exploited Children (NCMEC) CyberTipline Report 188008527, and any contemporaneous records indicating the date and time the employee at Discord Inc. viewed said contents and the process and procedures followed by the employee in so viewing.



January 13, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 818093333160

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Pharmacy |
| Signed for by: | D.DAISY | Delivery Location: | |
| Service type: | FedEx Priority Overnight | | |
| Special Handling: | Deliver Weekday | | GLENDALE, CA, |
| | | Delivery date: | Jan 13, 2025 09:41 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 818093333160 | Ship Date: | Jan 8, 2025 |
| | | Weight: | 0.5 LB/0.23 KG |

| Recipient: | Shipper: |
|---|---|
| GLENDALE, CA, US, | FRESNO, CA, US, |

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this
shipment.  Please check again later for a signature.

**EXHIBIT D-4**